**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| THE STATE OF LOUISIANA, by and through its Attorney General, JEFF LANDRY, et al., | |
| *Plaintiffs,* | Civ. No.:     2:23-cv-01157-JDC-KK |
| *v.* | Judge:       James D. Cain, Jr. |
| DEB HAALAND, in her official capacity as Secretary of the Interior, et al., | Mag. Judge:   Kathleen Kay |
| *Defendants,* | |
| and | |
| SIERRA CLUB, et al., | |
| *Applicant-Intervenor-Defendants.* | |

## <u>MEMORANDUM IN SUPPORT OF APPLICANT-INTERVENORS' MOTION TO INTERVENE</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

MOVANTS FOR INTERVENTION ................................................................................. 8

ARGUMENT ..................................................................................................................... 10

I.      The Applicants Satisfy Rule 24(a) and Should be Granted Intervention of Right. ........... 10

        A.      The Applicants' Motion to Intervene Is Timely. ................................................. 11

        B.      The Applicants and Their Members Have Legally Protectable Interests at
                Stake. .................................................................................................................. 12

        C.      Disposition of this Case May Impair or Impede the Applicants' Interests. ........... 15

        D.      None of the Existing Parties Adequately Represent Applicants' Interests. ........... 17

II.     Alternatively, the Court Should Permit the Applicants to Intervene Permissively. .......... 24

CONCLUSION ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*American Petroleum Institute v. Interior*,
　　No. 2:21-cv-02506, 2022 WL 1297802 (W.D. La. April 29, 2022) .......................................22

*Ass'n of Pro. Flight Attendants v. Gibbs*,
　　804 F.2d. 318 (5th Cir. 1986) ....................................................................................12

*Berger v. N.C. State Conf. of the NAACP*,
　　142 S. Ct. 2191 (2022) ...................................................................................18, 24

*Brumfield v. Dodd*,
　　749 F.3d 339 (5th Cir. 2014) ................................................................13, 16, 18, 21

*Coal. of Ariz./N.M Cntys. for Stable Econ. Growth v. Dep't of Interior*,
　　100 F.3d 837 (10th Cir. 1996) ............................................................14, 19, 23

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
　　788 F.3d 312 (D.C. Cir. 2015) ................................................................................24

*Ctr. for Biological Diversity v. EPA*,
　　No. 18-60102 (5th Cir. Mar. 28, 2018) ..............................................................20

*DeOtte v. State*,
　　20 F.4th 1055 (5th Cir. 2021) ...........................................................................13, 15

*Diamond v. Charles*,
　　476 U.S. 54 (1986) .............................................................................................13

*eBay Inc. v. MercExchange, L.L.C.*,
　　547 U.S. 388 (2006) ..........................................................................................23

*Entergy Gulf States La., L.L.C. v. EPA*,
　　817 F.3d 198 (5th Cir. 2016) ..............................................................................10

*Field v. Anadarko Petroleum Corp.*,
　　35 F.4th 1013 (5th Cir. 2022) .............................................................................14

*Fund for Animals, Inc. v. Norton*,
　　322 F.3d 728 (D.C. Cir. 2003) ............................................................................20

*Gulf Restoration Network v. NMFS*,
　　No. 8:18-cv-1504-T-27AEP, 2020 WL 836516 (M.D. Fla. Feb. 20, 2020) ............................4

*Gulf Restoration Network v. Salazar*,
　　683 F.3d 158 (5th Cir. 2012) ..............................................................................15

*Hanover Ins. Co. v. Superior Lab. Servs., Inc.*,
    179 F. Supp. 3d 656 (E.D. La. 2016) ......................................................................24

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ..........................................................................14, 18

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
    806 F.2d 1285 (5th Cir. 1987) ...............................................................................21

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) .................................................................................17

*Mausolf v. Babbitt*,
    85 F.3d 1295 (8th Cir. 1996) ................................................................................23

*Nat. Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ..............................................................................25

*NextEra Energy Capital Holdings, Inc. v. D'Andrea*,
    No. 20-50168, 2022 WL 17492273 (5th Cir. Dec. 7, 2022) ............................12, 17

*Ordnance Container Corp. v. Sperry Rand Corp.*,
    478 F.2d 844 (5th Cir. 1973) ................................................................................21

*Ruiz v. Estelle*,
    161 F.3d 814 (5th Cir. 1998) ................................................................................12

*In re Sierra Club*,
    945 F.2d 776 (4th Cir. 1991) ................................................................................23

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ..........................................................11, 12, 17, 19

*Sierra Club v. Glickman*,
    82 F.3d 106 (5th Cir. 1996) ..........................................................................17, 20, 21

*State v. Biden*,
    338 F.R.D. 219 (W.D. La. 2021) ..........................................................................22

*Stone v. First Union Corp.*,
    371 F.3d 1305 (11th Cir. 2004) ............................................................................17

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ..........................................................................11, 22

*Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*,
    332 F.3d 815 (5th Cir. 2003) ................................................................................24

*Trbovich v. United Mine Workers,*
  404 U.S. 528 (1972)....................................................................................18, 20

*Utah Ass'n of Cntys. v. Clinton,*
  255 F.3d 1246 (10th Cir. 2001) ................................................................20

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
  834 F.3d 562 (5th Cir. 2016) ........................................................... *passim*

**Statutes**

16 U.S.C. § 1536.............................................................................................4

43 U.S.C. § 1332...........................................................................................19

43 U.S.C. § 1344...........................................................................................19

**Federal Register Notices**

84 Fed. Reg. 15,466 (April 15, 2019).........................................................3, 5

86 Fed. Reg. 47,022 (Aug. 23, 2021).........................................................3, 4

88 Fed. Reg. 58,310 (Aug. 25, 2023)............................................................8

# INTRODUCTION

Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network (collectively "Applicants") respectfully move under Federal Rule of Civil Procedure 24 to intervene as defendants in this action to protect their and their members' interests in safeguarding the critically endangered Rice's whale and opposing Plaintiffs' collateral attack on a stipulated agreement reached in separate federal litigation.

In this case, Plaintiffs challenge the legality of the Bureau of Ocean Energy Management's ("BOEM") decision to remove certain acreage from oil and gas Lease Sale 261 to protect endangered Rice's whales that transit through the area and to include lease stipulations for any leases sold in Lease Sale 261 that protect the Rice's whale from vessel strikes, including limits on vessel speeds in the area. ECF No. 14-5 at 2, 8; ECF No. 14-4 at 9–13. BOEM made its decision in accordance with a stipulated agreement arising from separate federal litigation brought by Applicants. *See* Stipulated Agreement to Stay Proc., *Sierra Club v. National Marine Fisheries Service*, No. 20-cv-03060 (D. Md. July 21, 2023), ECF No. 147;[1] *Sierra Club*, ECF No. 154. Plaintiffs American Petroleum Institute ("API") and Chevron, U.S.A. Inc. ("Chevron") are intervenor-defendants in that case and did not file objections to the agreement. *See Sierra Club*, ECF No. 149 at 1–2 (asserting vague "concerns" with the basis for the agreement but concluding ultimately that "Intervenors do not object to the entry of an order that requires Plaintiffs and [the federal government] to comply with the terms of the agreement").

As demonstrated below, Applicants meet the four requirements for intervention as of right as this motion is timely, Applicants have legally protectable interests that may be impaired

---

[1] Subsequent citations to the docket in *Sierra Club v. National Marine Fisheries Service*, No. 20-cv-03060 (D. Md.) will be referenced as "*Sierra Club*, ECF No. ___". For convenience, the cited ECF entries from that case are attached hereto as Ex. A to the Declaration of Brettny Hardy ("Hardy Decl.") in chronological order.

1

by the relief sought, and none of the parties adequately represent Applicants' interests. If the Court determines that Applicants are not entitled to intervene as a matter of right, Applicants alternatively move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

## **BACKGROUND**

The critically endangered Rice's whale is found only in the Gulf of Mexico. The species is a baleen whale—a large, filter-feeding whale in the same biological order as the more widely known humpback whale, blue whale, and right whale. It is one of the most endangered populations of whales in the world, due primarily to oil and gas activity in its habitat. With only about 50 individuals remaining in a confined strip of the Gulf running from Florida to Texas, the Rice's whale's extremely small population makes it particularly "vulnerable to low levels of human-caused mortality." Hardy Decl., Ex. B, at 534; *Sierra Club*, ECF No. 121-1 at ¶ 11 (tbl.1).

The species is heavily impacted by widespread federally authorized oil and gas operations in the Gulf of Mexico. Federal agencies authorize oil and gas lessees to conduct numerous, year-round activities that harm the Rice's whale. ECF No. 16-2 at 140–146. Seismic airguns and other techniques used to locate oil deposits on leased parcels flood the whale's habitat with disruptive—and sometimes physically harmful—noise. *Id*. at 408–13. Drilling wells causes harm from deafening pile driving when installing platforms and inevitable oil and fluid spills into the water. *Id.* at 313–22, 452–63, 492–524. Operating and servicing offshore platforms creates multiple sources of harm from: air, water, and debris pollution, *id.* at 308–23, 482–92, thousands of oil and gas vessel trips that strike and kill animals and harm them with noise, *id.* at 334–85, 463–67, and installation of pipelines that destroy bottom habitat, cause noise, and can result in additional oil spills, *id.* at 305, 493–94. When production is complete, facilities are

decommissioned using explosives and other methods harmful to nearby animals. *Id.* at 435–52.

In 2010, the BP *Deepwater Horizon* oil spill disaster "heavily impacted" the already diminished Rice's whale population. ECF 16-2 at 169. It caused approximately 4.9 million barrels of oil to gush from the seabed and flow into the Gulf over 87 days. Hardy Decl. Ex. C, at 9. Visible oil contaminated more than 43,000 square miles of ocean and coated more than 1,300 miles of shoreline. Hardy Decl. Ex. D, at 2-3. So-called "invisible oil" covered a larger area, spreading through the water column to Florida's Atlantic coast. Hardy Decl. Ex. E, at 4. The federally-led *Deepwater Horizon* Natural Resource Damage Assessment Trustees ("Trustees") estimated that the disaster killed tens of thousands of endangered marine mammals and caused up to a 22% decline in the Rice's whale population. Hardy Decl. Ex. D, at 4-631 to 4-632. The Trustees concluded that the Rice's whale would require 69 years to recover from the effects of the spill. *Id.* at 4-631.

In 2019, the National Marine Fisheries Service ("NMFS") listed the Rice's whale as endangered under the Endangered Species Act ("ESA") throughout its range.[2] 84 Fed. Reg. 15,466 (April 15, 2019). NMFS listed the Rice's whale as endangered primarily "due to its small population size and restricted range" and due to harm from "energy exploration, development and production oil spills and oil spill response, [and] vessel collision." *Id.*  In 2016, the Service concluded that the Rice's whale population is already experiencing more "annual human-caused mortality and serious injury," Hardy Decl. Ex. F, at 4, than it can sustainably bear and is at a "high risk of extinction," Hardy Decl. Ex. I, at iv, 92-95. And in 2021, the Service formally recognized the Rice's whale as a unique, previously unnamed species. 86 Fed. Reg. at 47,023.

---

[2] The Rice's whale was previously thought to be a Bryde's whale subspecies. NMFS reclassified the Gulf of Mexico Bryde's whale as a new species, the Rice's whale, in 2021. 86 Fed. Reg. 47,022 (Aug. 23, 2021). This brief uses "Rice's whale" for consistency with BOEM's decision documents.

On March 13, 2020, BOEM, in coordination with NMFS, completed consultation on the effects to marine and anadromous species listed under the ESA, as to all federally regulated oil and gas program activities expected over the next 50 years in the Gulf of Mexico, resulting in a "Biological Opinion on the Federally Regulated Oil and Gas Program Activities in the Gulf of Mexico" (the "Biological Opinion"). *Sierra Club*, ECF No. 147, at 1–2. This Biological Opinion was a long time coming. The process began in 2010, when the Department of the Interior ("Interior") and NMFS agreed to reinitiate ESA consultation to account for changed conditions and new information after the BP disaster. Hardy Decl. Ex. G; Hardy Decl. Ex. H. Yet NMFS did not complete the Biological Opinion until nearly ten years later, despite having assured a federal court multiple times that it would do so several years earlier. *See Gulf Restoration Network v. NMFS*, No. 8:18-cv-1504-T-27AEP, 2020 WL 836516, at *2 (M.D. Fla. Feb. 20, 2020). Even then, NMFS only completed the Biological Opinion following a court order. *Id.*

In the Biological Opinion, NMFS concluded that the proposed actions it considered, including oil and gas activities in the Gulf, are likely to jeopardize the continued existence of the endangered Rice's whale. Although NMFS concluded that the next 50 years of oil and gas activities will jeopardize the species due to extensive harms and the species' "precarious status," ECF No. 16-2 at 553–54, it asserted that imposition of a single proposed reasonable and prudent alternative[3] that required oil and gas vessel traffic to slow to 10 knots or less and avoid nighttime transits within a portion of the eastern Gulf of Mexico would prevent jeopardy*, id.* at 600.

On October 21, 2020, Applicants filed a Complaint, alleging that the agencies' determinations in the 2020 consultation included analyses that: (1) were arbitrary and capricious and contrary to the best available science in violation of the ESA and the Administrative

---

[3] The ESA requires the formulation of reasonable and prudent alternatives when NMFS concludes that proposed actions will cause jeopardy to a listed species. 16 U.S.C. § 1536(b)(4).

Procedure Act ("APA"); (2) that the proposed reasonable and prudent alternative was arbitrary and capricious in violation of the ESA and APA; and (3) that NMFS's incidental take statement issued alongside the Biological Opinion was arbitrary and capricious in violation of the ESA and APA. *Sierra Club*, ECF No. 147, at 2. Applicants argued that NMFS underestimated the magnitude of harm and the degree to which those effects will hinder the Rice's whale's survival and recovery. Moreover, NMFS only considered harm to Rice's whales expected to occur within the eastern Gulf, outside the area currently available for oil and gas development, even though NMFS previously acknowledged that Rice's whales also are found outside that designated area.

When listing the Rice's whale as endangered, NMFS explained that the species had historically ranged in higher abundance across the northern Gulf before oil and gas activity pushed the population mostly into a relatively small portion of the eastern Gulf free from industrial development. 84 Fed. Reg. at 15,472. NMFS recognized that individual whales may occasionally venture into their historical range in the western and central Gulf, *id*. at 15,455, but "the species is likely avoiding the more industrialized part of their historical range" due to "[c]ontinued activities and associated noise" from oil and gas activities in that area, *id*. at 15,459–60; *see also* ECF No. 16-2 at 553 ("[T]he current, isolated distribution of the majority of Bryde's whales in the northeastern portion of the Gulf of Mexico may indeed be the result of long-term avoidance of areas of heavy oil and gas development.").

Plaintiffs API and Chevron both moved to intervene in that suit and the court granted intervention on May 12, 2021. *Sierra Club*, ECF No. 55. After nearly a year and a half of delays and preliminary motions, *see Sierra Club,* ECF No. 103, Applicants were able to move for summary judgment on May 27, 2022, *Sierra Club*, ECF No. 93. Before Federal Defendants and Intervenors were scheduled to respond to that motion, BOEM sent a letter to NMFS on October

25, 2022, requesting to reinitiate formal consultation on federally regulated offshore oil and gas activities in the Gulf of Mexico.

BOEM's request sought to reinitiate consultation based on its anticipated reevaluation of just one aspect of oil spill risk—which was just one of the Biological Opinion's many legal deficiencies—and to make an apparently technical amendment incorporating existing conditions of approval. *Sierra Club*, ECF No. 102-2 at 2–3. In its request, BOEM noted consultation *could* provide an opportunity to consider other issues *if* "appropriate," but professed no intent to include other issues in the consultation. *Id.* BOEM proposed to prepare a biological assessment by September 1, 2023. *Sierra Club*, ECF No. 108-3 at ¶ 5. NMFS claimed it would take "at least 12 months after receiving a complete biological assessment" to complete a new or revised biological opinion, *Sierra Club*, ECF No. 108-2 at ¶ 5. NMFS intended to leave the Biological Opinion in place to continue authorizing more lethal and sublethal takes of threatened and endangered species each year during the remand, including takes of Rice's whales. *See Sierra Club*, ECF No. 102-1. BOEM also continued to rely on the flawed Biological Opinion to authorize oil and gas activity in the Gulf of Mexico. *See Sierra Club*, ECF No. 102-2 at 3.

As a result of BOEM's request, NMFS sought voluntary remand without vacatur in the case. Applicants opposed NMFS's request for remand without vacatur in large part because additional peer-reviewed scientific evidence had emerged demonstrating that Rice's whales "persistently occur" throughout the northern Gulf of Mexico in waters 100-400 meters deep and were therefore at far higher risk than NMFS considered in the 2020 Biological Opinion. *Sierra Club*, ECF No. 121 at 21. *See also Sierra Club*, ECF Nos. 103-1, 103-2, and 121-1 at ¶¶ 14–15 & fig. 1. Applicants sought a ruling partially vacating the Biological Opinion to impose immediate interim protective measures for the whales during the reconsultation process. After

oral argument, the District of Maryland court entered a letter order referring the case to mediation with a magistrate judge on January 6, 2023. *Sierra Club*, ECF No. 132. The judge specifically stated that the mediation would "include the plaintiffs, the defendants, *and the intervenor defendants* [Plaintiffs API and Chevron]." *Id*. (emphasis added). The parties, including Plaintiffs API and Chevron, then met with a magistrate judge two times in January and February of 2023 to discuss the possibility of resolving Applicant's claims without further litigation. *See Sierra Club*, ECF No. 140 at 2. Those discussions continued through the spring and summer. *See Sierra Club*, ECF No. 146 at 2. On July 21, 2023, after conferring with Intervenors, Applicants and Federal Defendants filed a stipulated agreement to stay the litigation reflecting their substantive agreements and outlining the basis for the stay.  *Sierra Club*, ECF No. 147 at 1–7. The foundation for the stay included Federal Defendants' commitments to implement several interim protective measures to reduce harm to the Rice's whale until NMFS issues a new biological opinion, as well as NMFS's commitments to consider certain issues as part of the consultation and a deadline to issue a new biological opinion. *Id.* at 2–4.

Specifically, the agreement contemplates that BOEM would issue a "Notice to Lessees and Operators of Federal Oil and Gas, and Sulphur Leases in the Gulf of Mexico Outer Continental Shelf" that would include recommended measures to protect Rice's whales. *Id*. at 3; *see also Sierra Club*, ECF No. 147-1. It provided that BOEM would add a lease stipulation to the offshore oil and gas leases offered in Gulf of Mexico Oil and Gas Lease Sale 261 and any subsequent Gulf of Mexico oil and gas sales while the reinitiated consultation is ongoing.  *Sierra Club*, ECF. No. 147 at 3; *see also Sierra Club*, ECF No. 147-2. The proposed stipulation included vessel speed restrictions while transiting Rice's whale habitat along with other measures to protect the endangered whale. *Sierra Club*, ECF. No. 147 at 3. Finally, BOEM

agreed it would exclude the area between the 100-meter and 400-meter isobaths (depths) in the northern Gulf of Mexico from oil and gas lease sales (beginning with Lease Sale 261 and continuing while the reinitiated consultation is ongoing). The Agreement recognized the agencies' duty to comply with the ESA and other applicable laws. *Id*.

Plaintiffs API and Chevron are intervening defendants in the lawsuit and submitted a response to the stipulated agreement on August 4. Although they noted "concerns" about the predicate actions upon which the agreement is based, they did not formally object to the entry of the agreement and stay in that litigation. *Sierra Club*, ECF No. 149 at 1–2.

BOEM published its Final Notice of Sale and Record of Decision for Offshore Oil and Gas Lease Sale 261 on August 25, 2023. 88 Fed. Reg. 58,310 (Aug. 25, 2023). In accordance with the stipulated agreement, BOEM excluded 6 million acres of Rice's whale habitat from the sale, which will now offer a total of about 67 million acres, and included a stipulation for leases sold to restrict vessel speed in Rice's whale habitat and adopt other measures to protect Rice's whales. Plaintiffs now allege that decision violates the Outer Continental Shelf Lands Act ("OCSLA"), the APA, and the Inflation Reduction Act ("IRA"). ECF No. 1. They have moved for a preliminary injunction that would enjoin Federal Defendants from implementing the acreage exclusion or stipulation to protect the Rice's whale as part of Lease Sale 261, and compelling Federal Defendants to proceed with Lease Sale 261 on September 27, 2023, without those provisions. ECF No. 14 at 2. Because Plaintiffs' action directly affects the stipulated agreement, Applicants seek intervention as of right to protect their long-standing interest in protecting Rice's whales as embodied and advanced through that agreement.

## **MOVANTS FOR INTERVENTION**

SIERRA CLUB is a not-for-profit organization dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the

earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club is one of the oldest and largest conservation groups in the country, with about 722,000 members nationally. Manuel Decl. ¶ 4. The Sierra Club has five chapters throughout the Gulf region with thousands of members. *Id*. ¶ 5. Sierra Club, as an organization and on behalf of its members, has long been involved in seeking to promote the protection and recovery of Rice's whales. *Id*. ¶¶ 8–11.

CENTER FOR BIOLOGICAL DIVERSITY (the Center) is a nonprofit organization that works to protect wildlife, including endangered species and their habitats. The Center has more than 89,000 members who are dedicated to environmental conservation. The Center has longstanding interests in marine mammals, endangered species, and their habitat. Monsell Decl. ¶ 3. To advance these interests, the Center engages in advocacy and actions to protect marine habitat from the harms of offshore oil and gas activities. *Id*. ¶¶ 4–7, 9. The Center has worked to protect the Rice's whale for many years, *Id*. ¶¶ 8–14.

FRIENDS OF THE EARTH is a nonprofit organization with offices in Berkeley, California, and Washington, D.C. Templeton Decl. ¶ 2. For more than 50 years, it has championed the causes of a clean and sustainable environment, protection of the nation's public lands and waterways, and the exposure of political malfeasance and corporate greed. Friends of the Earth's Oceans and Vessels Program works to fight industrialization of the ocean in all its forms, and has won regional, national, and international limits on air, water, and oil pollution from cruise ships, cargo ships, oil tankers, ferries, and recreational watercraft. *Id*. ¶¶ 3, 6. Friends of the Earth has more than 6.6 million activists and 244,600 members, including members who live and recreate along the coastlines of the Gulf of Mexico. *Id*. ¶¶ 2–3. Friends of the Earth and

its members have a strong interest in protecting the environment from fossil fuel development and ensuring that oil and gas operations do not harm protected wildlife. *Id*. ¶¶ 3–6. Friends of the Earth has long fought to protect the Rice's whale and its habitat *Id*. ¶¶ 8–10.

TURTLE ISLAND RESTORATION NETWORK (TIRN) is a nonprofit organization based in California. TIRN and its members work to protect and restore populations of endangered sea turtles and other vulnerable marine creatures—such as the endangered Rice's whale—as well as marine biodiversity and ecosystems throughout the Gulf of Mexico. Steinhaus Decl. ¶ 3. TIRN has over 27,581 supporters in the Gulf region and over 100,000 members and supporters across the United States and the world. *Id*. ¶ 5. TIRN has fought for more than 30 years to make oceans healthier for humans and marine animals, including advocacy to protect and restore the Rice's whale, and the marine habitat it depends upon. *Id*. ¶¶ 3, 5–6.

## ARGUMENT

### I.     The Applicants Satisfy Rule 24(a) and Should be Granted Intervention of Right.

Applicants satisfy all requirements for intervention of right. Federal Rule of Civil Procedure 24(a)(2) provides, in pertinent part, "On timely motion, the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest" (emphasis added). The Fifth Circuit's precedent contains a "broad policy favoring intervention. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016). In evaluating whether an applicant meets Rule 24(a)(2)'s requirements, courts in the Fifth Circuit are directed that Rule 24 "'is to be liberally construed,' with 'doubts resolved in favor of the proposed intervenor.'" *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (citation omitted). Rule 24 favors intervention, and a court should grant it,

"where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). Courts in the Fifth Circuit accept the movant's factual allegations as true. *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).

When analyzing a motion to intervene of right under Rule 24(a)(2), Fifth Circuit courts apply a four-part test to determine whether to grant an applicant's motion:

> (1) the application . . . must be timely;
>
> (2) the applicant must have an interest relating to the property or transaction which is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]
>
> (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Wal-Mart Stores*, 834 F.3d at 565 (quoting *Texas*, 805 F.3d at 657). As discussed below, Applicants satisfy all the criteria of the Fifth Circuit's four-part test. Applicants each have a long history of advocacy on behalf of the Rice's whale and its habitat generally and have specifically worked for many years to establish protections for Rice's whales across the full range of the population, protections that Plaintiffs seek to erase in the present lawsuit. These efforts include litigation that resulted in a stipulated agreement whereby BOEM decided to exclude Rice's whale habitat from Lease Sale 261 and to impose additional protections for the whale as part of that sale, a decision now challenged by Plaintiffs in this case.

### A.    The Applicants' Motion to Intervene Is Timely.

Courts in this Circuit consider four factors in determining timeliness: "(1) the length of time applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4)

any unusual circumstances." *Ruiz v. Estelle*, 161 F.3d 814, 827 (5th Cir. 1998) (citation omitted).

The Applicants' Motion is timely. Applicants move to intervene roughly one week after Plaintiffs filed their complaint. At this very early stage of this litigation, delay that may prejudice an existing party is not an issue. Federal Defendants have not yet filed an answer, the administrative record has not been submitted, and there have been no hearings or rulings on substantive matters. *See, e.g.*, *Wal-Mart Stores*, 834 F.3d at 565–66 (finding motion timely when it was filed "before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded"). The length of time that has elapsed since the Applicants knew or should have known of their interests in this case is minimal. *Cf., e.g.*, *NextEra Energy Capital Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273, at *3 (5th Cir. Dec. 7, 2022) (finding intervention timely when filed within two months of plaintiffs filing suit and before defendants filed responsive pleadings); *Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d. 318, 321 (5th Cir. 1986) (holding five-month lapse was not unreasonable). Considering that Applicants filed their Motion at this early stage of litigation, there is no potential prejudice to other parties. *Espy*, 18 F.3d at 1206 ("[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation."). Moreover, Applicants agree to abide by the schedule for resolving Plaintiffs' preliminary injunction motion. Applicant's motion is therefor timely.[4]

## B.  The Applicants and Their Members Have Legally Protectable Interests at Stake.

Applicants each have a protectable interest in this litigation. Rule 24(a)(2) requires an applicant for intervention to possess an interest relating to the property or transaction that is the subject matter of the litigation. Fed. R. Civ. P. 24(a)(2). This requirement is not rigid. Rather,

---

[4] Regarding the fourth timeliness factor, there are no unusual circumstances in this case.

"[t]he 'interest' test is primarily . . . a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wal-Mart Stores*, 834 F.3d at 566 n.2 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). "The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting 6 James W. Moore, et al., Moore's Federal Practice § 24.03[2][c], at 24–34 (3d ed. 2008)). An interest is sufficient for purposes of Rule 24 if it is "legally protectable"—that is, "if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Wal-Mart Stores*, 834 F.3d at 566 (quoting *Texas*, 805 F.3d at 659); *see also Diamond v. Charles*, 476 U.S. 54, 75 (1986). "What is important is 'whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way.'" *DeOtte v. State*, 20 F.4th 1055, 1068 (5th Cir. 2021) (citation omitted).

The transaction that is the subject matter of this litigation is BOEM's Record of Decision for Lease Sale 261, including its decisions not to offer Rice's whale habitat for leasing and to impose a stipulation to protect Rice's whales from vessel strikes. Applicants have strong, legally protected interests related to that decision. Applicants are plaintiffs in separate litigation and parties to a resulting stipulated agreement that established BOEM would issue the final decision that is now challenged in this case. Plaintiffs API and Chevron are intervening defendants in that case and did not ultimately object to the stipulated agreement or use the opportunity to explain to that court or the parties the nature of their concerns such that they could have been addressed in a timely fashion as part of those proceedings. Applicants therefore have a strong interest in addressing these arguments as now presented in this case for the first time. BOEM's Record of

Decision for Lease Sale 261 that excludes Rice's whale habitat and includes a stipulation to protect Rice's whales directly arose from that previous litigation and stipulated agreement. Applicants have an interest in upholding the terms and protections they bargained for and obtained in that mediated agreement. *See Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1019 (5th Cir. 2022) (reversing district court and holding that interest in enforcing arbitration agreement that related to the plaintiff's claims constituted a protectable legal interest in the case sufficient to warrant intervention).

Moreover, Applicants have long advocated to protect the Rice's whale and its habitat, even before bringing their challenge to NMFS's Biological Opinion, investing significant staff time and financial resources. These efforts have included comment letters to Federal Defendants opposing oil and gas activities that harm the Rice's whale, advocacy to members of Congress to adopt protective legislation, participation in Rice's whale recovery planning workshops, submission of legal petitions to establish protections, testimony at public meetings, and litigation challenging BOEM's past leasing decisions that threatened to harm the Rice's whale. Manuel Decl. ¶¶ 8–12; Monsell Decl. ¶¶ 8–12; Templeton Decl. ¶ 8; Steinhaus Decl. ¶ 6. Courts have recognized that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Coal. of Ariz./N.M Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (holding a party with a "persistent record of advocacy for [the environmental] protection[s]" adopted by an agency that were subsequently challenged in court has a "direct and substantial interest" sufficient "for the purpose of intervention as of right").

Applicants and their members also have cognizable recreational, aesthetic, and research interests in protecting Rice's whales that are threatened by future oil and gas leasing. Manuel Decl. ¶¶ 6, 16; Monsell Decl. ¶¶ 3, 18; Templeton Decl. ¶¶ 4, 11; Steinhaus Decl. ¶¶ 7–12. For instance, members often seek out and enjoy opportunities to observe wildlife in the Gulf of Mexico, including the Rice's whale. *See, e.g.*, Monsell Decl. ¶ 3. Applicants have acted to advance those interests through years of advocacy. Manuel Decl. ¶¶ 8–12; Monsell Decl. ¶¶ 4–12; Templeton Decl. ¶¶ 5–8; Steinhaus Decl. ¶ 6.

In sum, Applicants' overriding interests in Rice's whale conservation and recovery, and in particular their efforts to compel protections in the full range of Rice's whale habitat, are protectable interests sufficient to support intervention as of right in this case. *See, e.g.*, *DeOtte*, 20 F.4th at 1070 (citing *Wal-Mart*, 834 F.3d at 565) (noting that the courts in the Fifth Circuit have a "liberal construction [of interest] in favor of intervention"); *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 167 (5th Cir. 2012). Applicants have not only invested years of effort and substantial financial resources addressing the failures of the federal government to protect Rice's whales, but they brought federal litigation and reached a stipulated agreement that resulted in BOEM issuing the long-overdue protections at issue in this case. Indeed, but for Applicant's legal efforts, BOEM would still not have adopted the protections for Rice's whale habitat that are the subject of this litigation. Applicants have demonstrated protectable interests sufficient to support their intervention of right in this case.

### C.    Disposition of this Case May Impair or Impede the Applicants' Interests.

Disposition of this case threatens to impair or impede Applicants' demonstrated protectable interests. The threshold for demonstrating potential impairment of interests is low as Rule 24(a)'s requirement only states that "the action *may* as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). "[A]

would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at 345 n.2 (emphasis added) (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)).

Plaintiffs in this case challenge BOEM's decision to finally protect the full range of Rice's whale habitat from the harm of oil and gas activity. That decision arose from more than a decade of Applicants' prior litigation and advocacy efforts, and the decision would not have occurred but for Applicants' previous legal and advocacy efforts, including in the *Sierra Club* litigation in the District of Maryland. In their lawsuit, Plaintiffs request that the Court declare BOEM's habitat exclusion and lease stipulation unlawful, vacate the related provisions in BOEM's Final Notice of Sale and Record of Decision for Lease Sale 261, and enjoin BOEM from implementing those related provisions. ECF No. 1 at 39. A decision favorable to Plaintiffs in this case would directly impair Applicants' interests in Rice's whale recovery and protection of Rice's whale habitat by effectively nullifying their many years of effort and expense.

Moreover, as a practical matter, Plaintiffs' requested relief would directly undermine an agreement reached in separate litigation, in which each of the Applicants invested significant resources to negotiate. Manuel Decl. ¶ 14; Monsell Decl. ¶¶ 16–18; Templeton Decl. ¶¶ 9–11; Steinhaus Decl. ¶¶ 13–14. Taking away the measures that form the foundation of the stay would likely restart the litigation. *See Sierra Club*, ECF. No. 147 at 5, ¶ 8 (providing that any party may move to lift the stay for good cause).

Plaintiffs' requested relief, if granted, would also harm the recreational, aesthetic, and other interests of the Applicants and their members in protecting the Rice's whale population and habitat threatened by even more oil and gas development. Manuel Decl. ¶ 16; Monsell Decl. ¶ 18; Templeton Decl. ¶ 11; Steinhaus Decl. ¶ 15. If the requested relief is granted, Rice's whale habitat would be encumbered by oil and gas leases and available for development without the

benefit of the mitigation measures that BOEM has issued. Such development would harm Rice's whales and their habitat.

A ruling in Plaintiffs' favor would also impair the Applicants' interests as a practical matter by having a potential chilling effect on the adoption of future BOEM measures to protect the whales. *See, e.g.*, *Sierra Club v. Glickman*, 82 F.3d 106, 109–10 (5th Cir. 1996) ("[T]he *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." (citing *Espy*, 18 F.3d at 1207)); *see also Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (recognizing that "one court's ruling . . . could influence later suits," even though "a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects"). All in all, disposition of this case may impede or impair Applicants' demonstrated interests in Rice's whale recovery and in upholding the protections that advance those interests and that resulted from the stipulated agreement that Applicants negotiated in separate litigation.

### D.      None of the Existing Parties Adequately Represent Applicants' Interests.

In evaluating the fourth and final factor for intervention of right, the Fifth Circuit has determined that the burden of establishing inadequate representation normally is "minimal." *NextEra Energy*, 2022 WL 17492273, at *4; *Espy*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). In the Fifth Circuit, courts must ask whether any differences in an intervenor's underlying interests create the prospect that the relevant existing party's representation "may be inadequate," which is a "minimal" showing. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 (5th Cir. 2022).[5] Representation may be inadequate—

---

[5] The burden is minimal "[b]ecause intervention necessarily occurs before the litigation has been resolved" and actual adequacy of representation will be apparent. *Wal-Mart Stores*, 834 F.3d at 569 (quoting *Texas*, 805 F.3d at 662). Accordingly, "[t]he movant need not show that the representation by existing parties will be, for certain, inadequate." *Brumfield*, 749 F.3d at 345

making intervention appropriate—when a potential intervenor's interests "may not align precisely," *Brumfield*, 749 F.3d at 345, or are merely "related, but not identical," *Trbovich*, 404 U.S. at 538. Showing a potential for inadequate representation is a task that "present[s] proposed intervenors with only a minimal challenge," *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022), and the Applicants have met it here.

Applicants in this case meet the minimum threshold for demonstrating that Federal Defendants will not adequately represent their interests. Although Applicants prefer that Federal Defendants vigorously defend BOEM's final decision to protect Rice's whale habitat, BOEM's decision is long overdue and had to be compelled through Applicants' separate litigation and mediated agreement. Manuel Decl. ¶ 17; Monsell Decl. ¶ 19; Templeton Decl. ¶ 12; Ex. Steinhaus Decl. ¶ 15. BOEM's longstanding failure to fully protect Rice's whale habitat is sufficient to demonstrate that the federal government cannot be depended upon to adequately represent Applicants' interests in this case. *See Idaho Farm Bureau*, 59 F.3d at 1398 (holding that government would not represent intervenors' interests because it "took action only after [intervenors] filed suit to compel [the government] to make a decision" and considering that the government "was unlikely to make strong arguments in support of its own actions considering that it proceeded to make a decision largely to fulfill the settlement agreement in the suit [intervenors] filed").

Applicants have also litigated repeatedly (and currently are litigating) against Federal Defendants' oil and gas decisions due to the government's failure to protect the Applicants' interests. That adversarial history regarding oil and gas development provides further evidence that the Applicants' interests diverge from those of BOEM. *See, e.g.*, *Coal. of Cntys.*, 100 F.3d at

(quoting 6 Moore et al., *supra*, § 24.03[4][a], at 24–27).

845–46 (holding Interior did not adequately represent conservationist where history of litigation existed). For example, three Applicants are currently engaged in pending litigation challenging BOEM's Lease Sale 259 for, among other things, its failure to protect Rice's whale and their habitat. *See Healthy Gulf v. Haaland*, Civ. No. 23-cv-00604-APM (D.D.C., filed Mar. 6, 2023). These same three Applicants are also litigating BOEM's Lease Sale 261 decision for its failure to, among other things, adequately analyze and assess the impacts of the lease sale on climate change and communities in the Gulf of Mexico as required by the National Environmental Policy Act. *Healthy Gulf v. Haaland*, Civ. No. 23-cv-02487-APM (D.D.C., filed Aug. 25, 2023).

In addition, Federal Defendants' interests in this litigation are broader than—that is, not identical to—the Applicants' interests. Applicants each have singular missions dedicated to environmental protection and preservation that only partially align with the numerous and varied statutory obligations placed on Federal Defendants. Manuel Decl. ¶¶ 3–5, 8; Monsell Decl. ¶¶ 3–4; Templeton Decl. ¶¶ 2–3; Steinhaus Decl. ¶¶ 3–6. For example, Federal Defendants' authority under OCSLA calls for them to represent—and balance—competing interests, such as recreational uses, national energy needs and more.[6]

Because Federal Defendants have an obligation to represent the broad public interest, not just the interests of Applicants' members, their views may diverge from Applicants regarding measures necessary to protect the Rice's whale. *See, e.g.*, *Espy*, 18 F.3d at 1208 (concluding that the agency "represent[s] the broad public interest, not just the economic concerns of the timber

---

[6] *See, e.g.*, 43 U.S.C. § 1332(3) (Outer Continental Shelf Lands Act, stating that these lands are "a vital national resource reserve held . . . for the public, which should be made available for expeditious and orderly development, subject to environmental safeguards . . . consistent with the maintenance of competition and other national needs"); *id*. § 1344(a)(1) ("Management of the outer Continental Shelf shall be conducted in a manner which considers economic, social, and environmental values of the renewable and nonrenewable resources contained in the outer Continental Shelf, and the potential impact of oil and gas exploration on other resource values of the outer Continental Shelf and the marine, coastal, and human environments.").

industry" and based on "the minimal burden," concluding "that [its] representation of the
intervenors' interest is inadequate"); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996)
(per curiam) (concluding that because the Department of Agriculture must represent the broad
public interest, "[f]or this reason alone," its interests and those of farmers seeking to intervene
"will not necessarily coincide"). *See also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736
(D.C. Cir. 2003) (noting that a statute's requirement to take considerations "into account does
not mean giving them the kind of primacy that the [interested person] would give them" (internal
quotations omitted)); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001)
("In litigating on behalf of the general public, the government is obligated to consider a broad
spectrum of views, many of which may conflict with the particular interest of the would-be
intervenor."). Although Applicants and Federal Defendants may have some overlapping interests,
"it cannot be said that Federal Defendants will undoubtedly make all of [Applicants']
arguments," or that they are "capable of and willing to make such arguments." *Trbovich*, 404
U.S. at 538 n.10.[7] In essence, Federal Defendants are charged with striking a balance between
environmental protection and oil and gas development and the Applicants' interests represent
only one side of that scale.

  Finally, Applicants and Federal Defendants do not share the same ultimate objective. The
Fifth Circuit has held that "when the would-be intervenor has the same ultimate objective as a
party to the lawsuit," a rebuttable presumption of adequate representation applies. *Brumfield*, 749

---

[7] Indeed, Plaintiff API has successfully argued as much before the Fifth Circuit when seeking to
intervene to defend a government action that it supports. *See* Order at 1, *Ctr. for Biological
Diversity v. EPA*, No. 18-60102 (5th Cir. Mar. 28, 2018), Doc. 514406602. Citing many of the
same cases, API's motion to intervene argued that its general alignment with the federal
respondents' in "opposing Petitioners' ultimate request for relief" was not dispositive. Motion at
14, *Ctr. for Biological Diversity*, Doc. 5144388722. What was dispositive, API told the court,
was that the EPA's "obligation [] to represent the broad public interest, not just the interests of
[API's] members," so their "views may diverge regarding the proper implementation of [the
statute at issue]." *Id*. at 19–20. The same is true here.

F.3d at 345 (quoting *Edwards*, 78 F.3d 983, 1005 (5th Cir. 1996) (en banc)). This presumption

applies when there is "unity in all objectives" between a potential intervenor and an existing

party. *Id.* at 346. The Fifth Circuit has thus found that a potential intervenor had the same

ultimate objective as an existing party where it was a member of an association that was a party

to the suit, *see Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987),

or when it was owed the proceeds of a contract an existing party had sued to enforce, *see

Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973).

        While Federal Defendants and Applicants may both have interests in opposing Plaintiffs'

relief request, they do not share the same ultimate objectives. Applicants have specific interests

in establishing protections for Rice's whales as part of Lease Sale 261. *See supra* at 13–15.

Federal Defendants, on the other hand, have broader interests, including, for example, preserving

their discretion to impose lease stipulations and exclude acreage from leasing generally. And

although Federal Defendants adopted measures to protect Rice's whale, they did so only after

Applicants filed litigation and the parties reached a mediated agreement in that litigation. *See

supra* at 4–8, 15.

        Where—as here—there is a clear misalignment between an existing party's interests and

a potential intervenor's interests, the Fifth Circuit has found inadequate representation without

resort to any presumption. And it has done so even when an existing party and potential

intervenor share the top-line goal of winning the lawsuit. *See, e.g.*, *Glickman*, 82 F.3d at 110

(concluding that the potential intervenors met their burden to show inadequate representation

"even though" they and the agency "share common ground" in defending the agency's action).

*See also Brumfield*, 749 F.3d at 340–41 (holding that a presumption of adequate representation

did not apply simply because an intervenor seeks to join the government's defense of its policy

because the potential intervenor's interest and the government's "interests may not align precisely"). Indeed, if the broad objective of winning a lawsuit constitutes an adequate overlap of interests, it is difficult to imagine circumstances where any defendant-intervenors would be permitted to intervene.[8]

Even if a presumption applies, Applicants have rebutted it. A potential intervenor can rebut the presumption by showing, as relevant here, "adversity of interest" with the relevant existing party. *Texas*, 805 F.3d at 661 (quoting *Edwards*, 78 F.3d at 1005). If a potential intervenor's interests "diverge from the [relevant existing party's] interests in a manner germane the case," adversity exists. *Id*. at 662. As discussed above, Applicants' narrower conservation interests diverge from Federal Defendants' broader interests in ways relevant to this litigation. *See Texas*, 805 F.3d at 663 (concluding that there was a divergence of interests based on an analogous mismatch between the federal government's broad interests when setting immigration policy and the narrower interests of beneficiaries of the DAPA program). Federal Defendants must consider a broad set of interests, held by a broad set of stakeholders when deciding how and when to lease public waters for oil and gas development. *See supra* at 19-20. The Applicants have a narrower set of conservation-based interests in protecting the Rice's whale and its habitat. *See supra* at 13–15 (describing those interests).

And Applicants were forced to bring separate litigation that led the Federal Defendants to make the decisions at issue in this case precisely because they interpreted and carried out their authority in a way that did not adequately consider or address those conservation-focused

---

[8] This case is distinguishable from *State v. Biden*, 338 F.R.D. 219, 223–24 (W.D. La. 2021) and *American Petroleum Institute v. Interior*, No. 2:21-cv-02506, 2022 WL 1297802 (W.D. La. April 29, 2022) for the same reasons. In those cases, the Federal Government voluntarily adopted a policy to pause leasing under its own initiative which was also a policy that the applicant-intervenors supported. Whereas here, the Federal Defendants only instituted the habitat exclusion and stipulation in question after opposing the necessity of such actions in separate litigation.

interests. The Federal Defendants' past "reluctance" to protect the Applicants' interests makes their "ability to adequately represent" the Applicants here "all the more suspect." *Coal. of Cntys.*, 100 F.3d at 845 (finding inadequate representation where a potential intervenor sought to defend the agency's decision to list an owl as a protected species under the ESA and the agency had made the listing only after the potential intervenor sued); *see also Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) (reversing the denial of intervention of an environmental group seeking to defend a regulation where its prior suits were "probably the reason for the current regulations"). In other words, Federal Defendants' and Applicants' previous disagreements about Federal Defendants' obligations provide reason to believe that they may diverge or disagree in this litigation too.

For example, their divergent interests may lead Applicants and Federal Defendants to take different positions on Federal Defendants' obligations under OCSLA and the IRA. After all, Applicants have been forced to challenge Federal Defendants' past actions under these statutes because they interpreted and carried out their authority in a way that did not consider Applicants' interests in Rice's whales. Federal Defendants' and Applicants' divergent interests may also cause them to have divergent views on the appropriate scope of equitable relief. Plaintiffs have already filed a motion for preliminary injunctive relief. ECF No. 14. Whether any such relief is appropriate will turn on, among other things, whether "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Applicants may, based on their narrower interests, have a unique view on whether the public interest supports injunctive relief and may need to support their view by introducing evidence into the record that the Federal Defendants would not. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (reversing a denial of intervention because, among other reasons, despite a shared

goal of defending the regulation at issue, "the interests may diverge at points involving . . . the balance of hardships . . . and the public interest factor").

For similar reasons, their divergent interests may cause Federal Defendants and Applicants to disagree over how to proceed post judgment. *See Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("It is apparent the Commission and Crossroads hold different interests, for they disagree about . . . post-judgment strategy."). In this case, Federal Defendants' broader interests—such as considerations of the federal government's litigation positions across all its cases—may cause it to make strategic or argumentative choices that do not protect Applicants' interests. *See Berger*, 142 S. Ct. at 2205 (finding that state legislatures with an interest in defending a state law met the inadequate representation requirement where, among other things, an existing party "declined to seek a stay" of a preliminary injunction that barred enforcement of that law).

Because they satisfy each element of Rule 24(a), Applicants should be allowed to intervene in this case as of right.

## II.     Alternatively, the Court Should Permit the Applicants to Intervene Permissively.

If the Court denies intervention as of right, Applicants request permissive intervention under Rule 24(b). "[P]ermissive intervention is appropriate where 'an applicant's claim or defense and the main action have a question of law or fact in common.'" *Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003) (quoting Fed. R. Civ. P. 24(b)(2)). In exercising its discretion, a court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' right." Fed. R. Civ. P. 24(b)(3). Upon finding that permissive intervention is appropriate, "district courts have 'broad discretion' in allowing intervention." *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016) (citation omitted). The Applicants satisfy Rule 24(b)'s requirements.

Applicants seek to defend the validity of BOEM's decision to exclude Rice's whale habitat from Lease Sale 261 within Rice's whale habitat and to impose stipulations on leases sold to protect Rice's whales from vessel strikes. Plaintiffs' claims collaterally attack provisions in an agreement Applicants negotiated that includes these measures. Given this overlap, the interests Applicants seek to protect and the defenses they seek to assert share common questions of both law and fact with the claims in this case, satisfying the requirement of Rule 24(b)(2).

In addition to meeting the standards for permissive intervention, the Applicants' participation may aid the Court's review by bringing expertise and familiarity with the reasons Rice's whale protections are necessary and proper. *See, e.g.*, *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977) (granting intervention in part because intervenor "may also be likely to serve as a vigorous and helpful supplement to EPA's defense"). Applicants' perspective based on years of advocacy will assist the Court in understanding the broad range of stakeholder support for BOEM's actions and the harm that will occur if BOEM is required to remove protections for Rice's whales.

Moreover, Applicants seek to intervene early in the lawsuit, before the record has been produced, and prior to any substantive briefing or rulings. They will abide by the existing schedule for briefing Plaintiffs' request for a preliminary injunction. Accordingly, allowing permissive intervention will not "unduly delay or prejudice the adjudication of the original parties." Fed. R. Civ. P. 24(b)(3). The Applicants should be permitted to intervene permissively.

## **CONCLUSION**

For the above reasons, Applicants respectfully ask this Court to grant them intervention as of right, or, in the alternative, by permission, to protect their and their members' interests in conserving Rice's whale and in vindicating an agreement reached in separate litigation.

Respectfully submitted this 1st day of September, 2023.

 *s/ Elizabeth Livingston de Calderon*
Elizabeth Livingston de Calderon (La. Bar No. 31443)
Earthjustice
900 Camp Street, Suite 303
New Orleans, LA 70130
504-910-1712  Telephone
415-217-2040  Fax
ecalderon@earthjustice.org

Stephen D. Mashuda (*pro hac vice* forthcoming)
Earthjustice
810 Third Ave., Suite 610
Seattle, WA 98104
206-343-7340  Telephone
415-217-2040  Fax
smashuda@earthjustice.org

George Torgun (*pro hac vice* forthcoming)
Brettny Hardy (*pro hac vice* forthcoming)
Earthjustice
50 California St., Suite 500
San Francisco, CA 94111
415-217-2000  Telephone
415-217-2040  Fax
gtorgun@earthjustice.org
bhardy@earthjustice.org

*Counsel for Intervenor-Defendants Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network*